### ASSESSMENTS FOR PARTITION FENCES.

Common Pleas Court of Clark County.

WILLIAM M. SMITH ET AL v. J. M. PIERCE, AUDITOR, ET AL.

Decided, September, 1914.

*Partition Fences—Validity of Assessment Against Owner of Right-of-way—For Constructing and Maintaining One-half of the Fence on Each Side.*

The owner of a right-of-way used as a farm outlet is required to construct and maintain one-half of the fence on each side of his right-of-way, irrespective of whether a complete enclosure is made at the end openings by gates or otherwise, and a valid assessment may be made for construction of such fence.

*McCormick & Hudson,* for plaintiffs.

*C. E. Ballard,* Prosecuting Attorney, and *Wm. M. Rockel,* contra.

HAGAN, J.

This case was submitted to the court upon the pleadings and upon evidence and the briefs of counsel. Plaintiffs in their amended petition aver that they are the owners of a tract of real estate of four acres off the west end of an eight-acre tract deeded to Sophia and Catherine Frock by their father, Peter Frock, Sr., by deed of February 9, 1885, said real estate being deeded to the plaintiffs by C. W. Minnich, with a right-of-way from the said premises to the Pole Cat road being the same right-of-way reserved in the deed of J. B. Crain, executor of Peter Frock, deceased, to Evan Creel, recorded in Volume 103, page 498, of the deed records of this county for the use and benefit of eight acres of land of which said four acres form the west end; that the said auditor has without authority of law directed the said treasurer to charge and collect from the plaintiffs upon the said real estate owned by them the sum of $56.60 as a special assessment for the costs of constructing an alleged

partition fence claimed to have been constructed by the township trustees of Mad River township, Clark county, Ohio, between the lands of the ''Athy heirs'' and the plaintiffs.

Plaintiffs further claim that the said alleged partition fence was built under a contract made by said township trustees which was illegal in that it provided for the use of a barbed wire to be placed on said alleged partition fence less than forty-eight inches above the ground; that the plaintiffs were not required to build or maintain the fence or any portion thereof in the place where the said alleged partition fence was constructed and that said board of trustees was therefore without authority of law to order or contract or construct said alleged partition fence where the same was placed.

The petition further alleges that there was an error in the certification of the said lands in the matter of the description; that said alleged partition fence did not complete the inclosure either of plaintiff's land or of the land of any other person or persons; that said alleged partition fence was not constructed between the land of the plaintiffs and any other person or persons and was not in fact a partition fence.

Then follows an averment that plaintiffs offered to pay their regular taxes to the said treasurer but he refused to receive the same unless they would also pay the above assessment and that the treasurer now threatens to and unless restrained by the order of the court will enforce the collection of said assessment with penalties thereon and will sell said property at tax sale or distrain the plaintiffs if said assessment is not paid.

The prayer of the petition is for a perpetual injunction against the said officers to prevent the collection of said special assessment.

Upon the filing of the petition a temporary injunction was allowed and the question now is whether the same should be made permanent.

On the hearing it was agreed between the parties that the statutory proceedings on the part of the township trustees, the certification of the assessment to the auditor and the placing of the same upon the duplicate were according to law, the plaint-

iffs waiving any slight irregularities that they might otherwise attempt to show, and two matters remain for determination, viz.:

First, was said fence constructed in violation of Section 5909, General Code of Ohio, which provides in substance that no person shall cause to be constructed a fence from barbed wire unless written consent of the adjoining owner be first obtained, but that such consent shall not be necessary for the use of one or two barbed wires, provided that neither thereof is less than forty-eight inches from the ground and is placed on top of the fence other than a barbed wire fence?

Second, did said township trustees have the legal right to cause the construction of said fence as a partition fence?

In regard to the first question, the testimony given by the plaintiffs as to the height of the fence is quite meager and indefinite, while that offered on behalf of the defendants is not in all respects consistent. The surface of the ground along the line of the fence appears to be somewhat uneven which may account to some extent for the variations in the measurements of the height of the fence. The fence was constructed of woven wire except a single strand at the top thereof which consists of barbed wire. Taking the testimony as a whole the court finds that the height of the fence to the top wire ranged from forty-eight to fifty-two inches. The width of the top wire was, as one witness said, about equal to that of an ordinary lead pencil—another one-quarter of an inch. It appears, therefore, that the fence in this respect was constructed in substantial conformity to the statute. So far as the testimony of the plaintiffs is concerned they wholly fail to maintain the allegations of their petition in this respect.

As to the second question above stated its consideration may be properly divided into two parts:

(a) That the said alleged partition fence was not constructed on the line of the premises of the respective parties, and

(b) That it did not complete the enclosure of the lands of the plaintiffs.

It is claimed that said fence was not constructed on the line of the right-of-way of plaintiffs and the adjoining lands of the Athy heirs. The original grant of that way which was afterwards conveyed to the plaintiffs did not define the width of the proposed way. It was bounded on the south side by a fence dividing it from what may be referred to in the testimony as the Snyder lands. As it existed from the time of the construction of said alleged partition fence it is substantially one rod in width and the same has been used at various points of the way by the plaintiffs to the full extent of the width. No objection was made by the plaintiffs to the width of the right-of-way at the time the partition fence was located and the court therefore thinks that the parties have practically given a construction of the width by their own acts and that therefore the fence may be justly treated as a line fence between the said right-of-way and the adjoining lands of the Athy heirs. The court does not therefore think the contention of the plaintiffs in this respect is maintained.

The principal argument made by counsel for planitiffs is on the proposition that said fence is not a partition fence within the provisions of the statutes of Ohio for the reason that it does not complete any enclosure either of the plaintiffs' land or of the lands of any other persons. We may dismiss this argument as to the claim that the partition fence does not make an enclosure of lands of other persons, as this is immaterial under the statutes of Ohio. If it were necessary, however, to decide on this point the court finds that this claim is not sustained by the evidence as to the adjoining lands of the Athy heirs by reason of the fact that said partition fence enclosed said right-of-way at all points, at the time of the construction thereof and completed the enclosure, although portions of the fence along the public road on the lands of the Athy heirs may at the time of the construction of said fence have been out of repair.

At the time of the construction of the fence the fee of said right-of-way and for some time prior thereto had been in the Athy heirs and they had joined the owner of the lands

south of said right-of-way in constructing a partition fence between said lands and the right-of-way, which partition fence was in existence and has ever since remained in existence except that a small part thereof, not exceeding probably 150 feet, next to the public road into which said way opens, has become out of repair and fallen down, the testimony being conflicting as to just what the condition of this part of the fence was at the time the said partition fence was constructed. The right-of-way is about eighty rods in length and this small part in disrepair can easily be repaired at small cost.

Before the construction of said partition fence the Athy heirs had laid out a tract of about sixteen acres of land immediately adjoining the right-of-way on the north into several tracts for the purposes of cultivation and pasturage, with fences running east and west to said right-of-way and in order to complete the several enclosures they had constructed several gates or bars across the right-of-way, but the plaintiffs by opening the same could pass over the right-of-way to and from their said premises. The court finds that the plaintiff, William M. Smith, complained that on account of being compelled to open and close said gates or bars he was greatly inconvenienced, and to obviate this he requested that they should be removed and a fence constructed between said right-of-way and the said land of the Athy heirs, the plaintiffs claiming that there had been an agreement between them and the Athy heirs by which there was to be a gate at the terminus of the said right-of-way at the Pole Cat road, a public highway, and another gate at the terminus of said right-of-way at said premises of plaintiffs, but whatever the arrangement was on this point it seems to have been superseded by the arrangement that there should be a fence along the north side of the right-of-way between it and the Athy lands, which was to take the place of said bars or gates.

In the grant of the right-of-way there is no provision as to whether gates or bars may be maintained at the termini thereof and in such case the law appears to be that the owner of the fee may lawfully erect gates or bars at the termini of the

way either where it enters the highway or at the opposite end. *Methodist Prot. Church* v. *Laws*, 7 C. C., 211.

The court in that case held that apparently the same principle which would enable the owner of the fee to do this would also authorize him to erect gates or bars not only at the termini of the way but also wherever it passes through his adjoining lands and separated from each other by a fence and in every case where such right is questioned the point would be to the jury whether in the particular circumstances it is reasonable to have the number of gates and bars on such way as appear in the particular case. The Supreme Court of Ohio affirmed this case in *State* v. *Taylor*, 55 Ohio St., 62. See, also, *Gibbons* v. *Ebding*, 70 Ohio St., 298.

It does not appear that the exercise of said right by the Athy heirs, the owners of the fee, in this case was unreasonable in the circumstances.

Now to relieve himself from the burden which these gates and bars imposed upon him in the way of opening and shutting the same, the plaintiff, William M. Smith, requested the construction of said fence between said right-of-way and the lands of the Athy heirs, which was accordingly done by means of said proceeding had by and before said township trustees.

It is in evidence that the plaintiffs passed in and out over said right-of-way with vehicles and that their friends on numerous occasions had made use of the said right-of-way in the same manner and also that he took his live stock in and out of the same. Certainly the use of the way for the purpose of taking in and out live stock was beneficial to the plaintiffs. So far as the disrepair of the line of fence on the south side thereof was concerned the plaintiffs could easily have remedied the same at slight cost even if it was in such disrepair as not to be a good fence to keep out stock at the time of the construction of the said partition fence. Moreover the Athy heirs or their assignees would have the right to make use of the adjoining land for pasturage purposes and a fence between the right-of-way and such pasturage lands would bar stock from interfering with the use by the plaintiffs of said right-of-way which in the

case of breechy and vicious stock might be called a valuable protection.

The evidence 'does not show that at the time of the construction of said partition fence there was a gate or bar at the terminus of said right-of-way where it opens into said Pole Cat road nor has there at any time since been a gate or bars at that point.

Counsel for plaintiffs cite the case of *Kingman* v. *Williams*, 50 Ohio St., 722, the syllabus of which is:

"One adjoining proprietor can compel another to contribute to the expense of building or maintaining a partition fence between their lands, only, when the partition fence completes an enclosure which contains no other lands than those of the latter."

It appears by the statement of the facts in the case that the township trustees in that case made an assignment of the fence to be constructed in the year 1887 under the law contained in Sections 4239, 4240, 4241 and 4242, Revised Statutes (Sections 5908 to 5912, General Code). An examination of those sections of the Revised Statutes does not disclose any reference to rights-of-way for farm outlets except as appears in Section 4241, Revised Statutes, which provides that in case of narrow strips of land not more than two rods in width between adjoining farms of other persons while used and occupied by such owners for the purpose of farm outlets to and from public highways, the owners thereof, unless otherwise provided for shall keep and maintain in good repair one-half of such partition fence on either side of said farm outlet or private right-of-way.

This was the state of the law when the case of *Kingman* v. *Williams, supra,* was decided but no point arose as to such rights-of-way, the gist of the case being that where the alleged partition fence did not complete a separate enclosure for lands of an adjoining owner, but completed an enclosure for the lands of such owner and the owner of an adjoining tract not bounded by the partition fence, no part of the cost of constructing the partition fence could be collected from the adjoining

owner along whose lands the partition fence had been constructed.

By Section 5919, General Code, it is provided that the term "owner" shall apply to the owner of land in fee simple, of estates for life or of rights-of-way while used by the owners thereof as farm outlets. Originally this section may be found in 98 O. L., 149.

The case of the *Alma Coal Co.* v. *Cozad,* 79 Ohio St., 348, is also cited by counsel for plaintiffs. This case arose under Section 4239, Revised Statutes (Section 5908, General Code), passed April 18, 1904 (97 O. L., 138), which provided that the owners of adjoining lands shall build, keep up and maintain in good repair all partition fences between them in equal shares unless otherwise agreed upon between them, and by Sections 4242 and 4243, Revised Statutes (Sections 5910 to 5915, General Code), it was provided that if any party neglects to build or repair a partition fence, or the portion thereof which he ought to build or maintain, proceedings may be had before the township trustees to secure the construction of the partition fence and the collection of the cost thereof and the share of the resisting proprietor. The court said of these provisions of the Revised Statutes:

"The act contains no definition of a partition fence which would necessarily include a fence constructed and maintained by one proprietor for his sole use and not used by the other in the enclosure of his lands."

It appeared in that case that the lands of the plaintiff against which it was sought to make and collect an assessment for the partition fence were all wild, uncultivated and unfenced; that he had no desire or intention to improve, fence or cultivate any portion thereof and that said fence was of no value or benefit to it whatever. The Supreme Court said that upon this state of facts it must hold that any construction of said Revised Statutes which would justify the collection of such an assessment would require the court to hold statutes to that extent unconstitutional and that therefore the court would not

so construe such statutes and held that the assessment could not be collected.   The court said however at page 356:

"A special assessment can be made only in consideration of a special benefit conferred upon the owner of the property assessed or upon the property itself."

Now we have already seen in the consideration of the facts in this case that the partition fence here in controversy was constructed at the request of the plaintiffs to relieve them of the burden of opening and closing gates upon their right-of-way and that such fence is quite beneficial to them in the respects already pointed out.   The plaintiffs can easily make a complete enclosure of said right-of-way by putting a gate at the terminus thereof where it opens upon the Pole Cat road and the owners of the land abutting on the north side of the right-of-way have the right to cause such gate to be constructed.

The question made here is a new one, but the court believes that it was the design of the Legislature to provide for the construction of partition fences along rights-of-way irrespective of whether a complete enclosure thereof is made at the termini and that it was the legislative intention that a partition fence could be constructed in such a case and an assessment made upon the owner of the right-of-way because it would be in the nature of things beneficial to him.

In consideration of the facts found by the court and the rules of law which have been stated the court is of the opinion that the plaintiffs have not maintained their action in this case and therefore the temporary order of injunction will be dissolved and the petition of the plaintiffs dismissed.